for the state of Illinois versus James D. Maguire. For the appellant is Sarah Lucy, you are she? Yes, your honor. Okay, thank you. And for the appellee is Ben Sardinus? Yes, indeed, sir. Is that pronounced correctly? Sardinus is yes, correct. Well, we're set to proceed and we will start then with Ms. Lucy making her oral argument on behalf of the appellant. Thank you, your honor. Good afternoon and may it please the court. My name is Sarah Lucy from the Office of the State Appellate Defender on behalf of the appellant James Maguire. The principle that penalties will be proportionate to the seriousness of the offense is enshrined in our constitution and reinforced by our Illinois Supreme Court in People v. Stacey. Even if a sentence is within sentencing guidelines, it can be unconstitutionally disproportionate to the crime. Here, Maguire was not terrorizing a neighborhood, breaking into strangers' houses. He went into his aunt and uncle's house, put on a change of clothes, and took some. food. While his aunt and uncle did ask to press charges, they did so without asking for restitution and asking that he not receive prison time. All of which took place. All of which took place, your honor, and he pleaded guilty to a class two felony. The state points out that Maguire continued to use drugs while he was on probation and that's When he went into his aunt and uncle's house, he had never gone to any sort of rehabilitation treatment. After the state filed its petition to revoke his probation, he successfully completed his first rehab treatment at Smarts in Eastern St. Louis. But even so, he wasn't able to quit his addiction issues right away. Despite his addiction issues, his criminal history is not extensive. He has one prior felony conviction for residential burglary, for which he served four years in prison. Before that, he only had two misdemeanor convictions. This is hardly the criminal history of an unredeemable recidivist. The trial court acknowledged that his prior felony, like this one, was due to his ongoing addiction issues. At resentencing, Maguire's attorney asked for continued probation so that Maguire could continue receiving addiction treatment. This would have been consistent with our legislature's guidelines, which do not cut an offender off from drug court after only one failed attempt. Our legislature understood that addiction is an insidious disease that takes multiple tries to overcome. In fact, a defendant has three tries to go to drug court, where only the trial court and the defendant have to agree to the sentence. After three times, the defendant isn't cut off from drug court. They only have to get the prosecutor's permission to get resentenced to drug court. And that happens even if they fail out of the drug court, even if they are unsuccessfully discharged from the program. Counsel, are you suggesting that the trial court was somehow required to allow him to go back into drug court? Not at all, Your Honor. While the legislature does say that community-based sentencing should be the first goal, the first go-to for a sentencing court, the court was not required to give him another chance at drug court. And indeed, if drug court is no longer suitable in Maguire's case, the statutory minimum, which in this case would be three years, would have been a more appropriate sentence given the nature of the crime. And what was the maximum he was facing? The maximum, he was extended term eligible, so it would have been 14 years. That would have been for only his second felony and for walking into his aunt and uncle's house. He did not have their permission to be there, correct? He did not have their permission to be there, and they asked that they press charges. There's no way around that. Residential burglary pled down to a burglary. At the aunt and uncle's request, it was pleaded down to a class two felony so that he could receive probation. And he got the probation that they wanted him to get, even in spite of the judge's concerns, right? He did. And two weeks later, he's already in violation, right? He had not yet gone to rehabilitation treatment. That is true at that point. And he did. He did continue to use drugs. Unfortunately, as I said, this was his first attempt at getting clean, his first opportunity. And at the end of the day... Counsel, you said that before. What do you mean by opportunity? Are you suggesting that he could not have made the decision on his own to seek treatment before being involved in the criminal justice system? I'm not quite following you. He could have sought treatment on his own. Absolutely. He wouldn't have had the resources of this court behind him to help him if he sought treatment on his own. But he could have. Well, but he'd also been in court a number of times before. And at any time that he was sentenced on any of these previous offenses, he could have said, you know, I have a drug problem and I really need to get some help. So could we include as a condition of my probation or my conditional discharge, my court supervision, some sort of drug rehabilitation, right? He admitted that he had a drug problem that was part of the record at his previous felony. However, he didn't receive any treatment then. He was sentenced to four years in the Department of Corrections, and there's no indication on his pre-sentence investigation report that he received any treatment while he was in prison. OK, let me ask the question again. Maybe I wasn't clear. At any of the previous times he has been sentenced on the various and other offenses for which he has been convicted, he could have requested drug treatment as part of his sentence, correct? I suppose he could have, Your Honor, during the two misdemeanors or the prior felony. I don't know that the record shows that he didn't request it for his prior felony. I just simply don't have that record in front of me. OK. But based purely on this offense, on the facts of the offense, which our Constitution states should be the foundation of the sentence that he receives, at most, a prison sentence of six years would be appropriate. That would be in line with the trial court sentencing scheme, which it called progressive sentencing, where the first Department of Corrections sentence was four years and each incrementally more severe. If his first class one felony got a four years, perhaps the second felony would receive a six-year term. Instead, what the trial court did here was doubled his last Department of Corrections term and then added a year, which was just... Counsel, when you're talking about this progressive sentencing, what is that based on as far as the sentencing code? I mean, we know our offenses are classified and the judge has arranged that he or she has to fall within if it meets that classification. Are you suggesting that there's some requirement that you enter into this progressive sentencing and that that means that you can't go from a four-year to a nine-year? There's nothing in the sentencing that says you can't go from a four-year to a nine-year, nor do I mean to imply that there is. I mean to say that the sentence imposed, even if it's within the statutory range, which nine years is, it's still excessive if it's manifestly disproportionate to the nature of the offense. So while there's nothing in the sentencing guidelines that precludes the court from going from four to nine years, the court still has to consider the actual underlying offense, even if it decides that the conduct on probation might somewhat bend what it would have given in the first place. So in this case, we see it gave drug court on the first time that he was in front of this court for sentencing and then decided that a prison sentence was appropriate on resentencing. The sentence on resentencing still has to comply with the constitutional mandate that it be proportionate to the underlying offense. So the statement... It seems like you're relying quite heavily on the fact that, well, he committed this crime against family and they didn't want him to go to prison. Are we, should the judge have considered that? Not under every circumstance, Your Honor. I think here it's appropriate given the facts. I don't say that it would be appropriate in every case, but here walking in without causing any property damage, without breaking a window, breaking a door, and only taking a change of clothing, two hot dogs, two pop darts, two bottles of juice, whether or not... Nice. I beg your pardon, Your Honor. And a knife. Yes, that was, yep, but the knife and the clothing could be returned to the family members. They weren't strangers that they couldn't be returned to. This is a guy who's already on parole for residential burglary, right? So now he's committing another residential burglary. He gets it pled down and now he's violated his second residential burglary, essentially. Pled down to a burglary. Don't you think that the judge, when you read the judge's comments in the record, don't you think that he was particularly disturbed and concerned about the life-threatening behavior, self-threatening behavior the defendant was engaging in by drinking bleach in order to hide his drug results and that perhaps part of the motivation for the sentence was because this guy had gone so far off the deep end in maintaining his drug habit? Because now he's already been to prison once. That didn't stop anything. He's been given probation on a what would have otherwise been a mandatory prison sentence. That didn't stop anything. He's done his 30 days at his SMART program, which obviously didn't do anything except reduce his level of tolerance so that he can get higher faster with less drugs. And now he's facing another violation because now he's been diluting or he's been doing something to alter the urine sample. And when the judge found out that he was drinking bleach, that seemed to be a particular concern to the judge. My question is, it seemed to me that the judge's concern and the reason for the sentence was more for the protection of the defendant than what you call an excessive sentence because he clearly was not going to stop. What I would find unfortunate with the trial court's assessment there is that if the court's solution was to sentence him to nine years for his protection, it did so while acknowledging that there are drugs in prison. So prison will not actually help McGuire with this addiction issue. If the problem is the addiction and part of the addiction is drinking bleach, then surely the primary concern should be to get him off of his drug addiction. The judge can't do that. All he can do is try to do something to put something in his way to maybe keep the guy alive because he's on his own, engaging in his own self-destructive behavior to a point where now he's consuming bleach on a fairly regular basis in order to hide these drug tests. Now, using your logic, nobody who has a drug problem should ever go to prison because there is the possibility that there are drugs in prison. I'm not sure that we want to go quite that far. Certainly not that far, your honor. And while I agree with you that the judge cannot spark the desire to give up drugs in McGuire, what we can do is put defendants in the best position to seek that treatment. So simply locking them away for greater and greater increments of time might not necessarily do the trick and goes against the legislature's goals in providing drug court rehabilitation. Also, do you think the trial court was hesitant really to even initially put the defendant on probation? It kind of went along because that's what the relatives wanted? The trial court did seem to have a lot of hesitation around granting him probation, which I think is unfortunate. Like I said, the legislature acknowledged that it takes people several times for addiction remedies to stick. It's not the first time you go into from ever doing drugs. So I think acknowledging that a department of corrections sentence is not going to do anything to help him with his rehabilitation while simultaneously sentencing him to nine years on the crime that he committed is an excessive sentence. And I don't argue that the trial court didn't weigh the factors of aggravation and mitigation, but the trial court has to do more than simply consider the statutory factors. It must craft a sentence that's then proportionate to the offense. The most aggravating factor for the court, as we've been discussing as Justice DeArmond brought up, was McGuire's addiction and pointed out that until he gets that addiction under control, he maybe might in the future commit a property crime, but then admitted that he would also have access to drugs in prison. So while urging McGuire to fix the underlying problem, the court sentenced him to a place where he would have the access to drugs, but limited access to treatment. And while McGuire recognizes that he did not raise this issue in front of the trial court, he asked this court to review the error either under plain error or ineffective assistance of counsel. Counsel was ineffective by not filing any motion to reconsider a sentence, despite the obvious shock in the courtroom when the nine-year sentence was handed down. I'm missing the connection between those two. The fact that the relatives are shocked, what does that got to do with the judge's assessment of whether that was an appropriate sentence or not? It shows that counsel was ineffective for not filing a motion to reconsider, both because not only was Mr. McGuire's family shocked, but he indicated shock as well, and then filed a pro se notice of appeal where he marked the box that he wanted his sentence to be reconsidered and just said less than nine years. That should have been a motion to reconsider a sentence, had counsel taken the opportunity to consult with Mr. McGuire. Having failed to do so, counsel was ineffective. And moreover, the sentencing evidence was closely balanced in this case. Pardon me. On one hand... Is Justice Holderwhite still able to hear? I can still hear you all. I can't see you, and I'm assuming you can't see me. I don't know what happened. This has never happened before, but I can still hear you. Yeah, we've got the background, but just not... Well, let's continue on, Justice Holderwhite, if you can hear, and we'll hopefully be able to get that corrected. Yes, Your Honor. On one hand, the McGuire committed this offense, as this court has pointed out, while he was on parole, and he violated the terms of his drug test, and so was being punished for the conduct for which he violated his parole. And the victims asked that he not go to prison, and his nine-year sentence was for taking food and clothing from family members. Closely balanced evidence at sentencing is different from closely balanced evidence at, say, a guilty verdict or for a motion to suppress, where the granted. Here, the evidence is closely balanced, and Justice Holderwhite, we are able to see you again. Welcome back. The evidence is closely balanced if the sentence could have been reasonably reduced even by, say, a factor of six years to the statutory minimum of three, or brought down by three years to the state's recommended six years of Department of Food and Clothing from his aunt's and uncle's house. He believes that the evidence was closely balanced. What's the standard review in this case? It is abuse of discretion, which McGuire absolutely knows is a difficult burden to overcome. Doesn't that essentially mean that no reasonable person could have opposed the sentence that the trial judge did in this case on these facts? If I may quote this court, I believe it put it best, which is that if the sentence imposed is within the statutory range, it will not be deemed excessive unless it is greatly at variance with the spirit and purpose of the law or is manifestly disproportionate to the nature of the offense. Here, although it's within statutory range, the sentence is disproportionate to the nature of the offense, and thus it is an abuse of the court's discretion. For these reasons, Mr. McGuire asked the court to reduce his sentence either to three years, the statutory minimum, or to six years, the state's recommendation. Thank you. Thank you, counsel. Mr. Sardinus, you may make your argument on behalf of the appellee. Good afternoon, Your Honors. May it please the court and counsel. I'd like to just quickly begin to answer Justice DeArmond's question about the defendant's lack of a request. I just reviewed the PSI. It doesn't appear that defendant ever requested any kind of drug treatment in any of the previous criminal instances that he had with the court, so just to clear that particular factual question that the court had before I begin. I just have a couple of points I'd like make on the two issues that defendant raises in this case, being the sentence and the effectiveness of his counsel's representation. The first being that the trial court sentence was not manifestly disproportionate to the nature of defendant's criminal actions and totality of the circumstances of the case that was presented before the court. So as Justice Steigman specifically noted, the central question about this case is whether or not, when it comes to the sentence, is whether or not the trial court's decision about the nature of his criminal acts, the nature of his rehabilitative potential, and the nature of whether or not he had a propensity to commit future offenses, whether those conclusions all brought together in rendering a sentence with those considerations were an abuse of discretion. And the underlying facts of this offense are that defendants stole from his aunt and uncle. He stole a knife, he stole food, he stole clothing from his the outset. He could have received residential burglary, which had a maximum range, I believe, of 30 years if the state had gone forward with that particular charge, and instead just charged him with burglary to allow him to address these drug issues, and he was given probation. And then immediately once he received probation, he began assisting other people in defrauding the drug testing process that was in place. That's how they found out the defendant was defrauding the tests, and the petitioner revoked that he defrauded the tests and that he was testing positive for methamphetamine, amphetamines, and in the pre-sentence report, cocaine. So this defendant took the opportunity that the state gave him when they could have thrown the book at him and decided to assist others in defrauding the drug testing regime. He was still testing positive after he pled and before he was sentenced. Yes, your honor, I believe that is the case based on the pre-sentence report timeline. He decided to take that opportunity and he decided to continue to use drugs, and as the trial court detailed at length, which the reason that when I drafted the brief I included such long excerpts from the trial court's decision is I wanted to make sure that this court was aware this wasn't a kind of drive-by analysis of defendant's history. This was a long and thought-out process by the judge explaining why he thought this particular defendant would continue to use drugs, would continue to use drugs and commit crimes based on his drug addiction, and that all the evidence in the record up till date has shown that he has refused to address that treatment absent the short stint in the outpatient that the defendant noted. So while defendant may disagree with the trial court's long and detailed factual findings about this, that doesn't make them unreasonable, that doesn't make them arbitrary, or it doesn't make them lacking in conscientious judgment, which is what the abusive discretion standard demands for a reversal on these kind of grounds. And your honors, I think that if we put all, if we pulled all three of the judges on this panel blind and asked them what sentence they would give this defendant, we would end up with three different answers. If we put a hundred judges in the room, we could end up with a hundred different answers as to how many years this defendant could have, should have gotten for the criminal offense. But that's not the standard, is whether or not there could be a disagreement. The question is whether or not this is manifestly unreasonable. And the court made detailed findings explaining its thinking, and none of those findings were based on an unreasonable or arbitrary basis. They were based on the court's experience with this defendant, reviewing the record, explaining the facts, and making a determination that that statute. Additionally, as the state laid out in its brief, the trial court didn't imply that people who use drugs should somehow always receive prison sentences instead of probation. On the one hand, being that defendant here pled to the burglary and received probation from this particular judge, but that also when the judge made that probation determination, specifically let the judge, the defendant know that the defendant's particular facts and circumstances were the reason that he would likely receive prison time if he had, if he violated his probation on resentencing. And that's not what the court, this court encountered in Daley. In Daley, the judge said something like, public policy and the law that's embedded in the statute indicates that unless the court determines extraordinary circumstances exist, that the defendant has to serve a period of incarceration. That is a very different statement as to the nature of the criminal offense of what was in that case, a reckless homicide based on a DUI, than what the court was speaking directly about what defendant circumstances were and letting defendant know that based on what his criminal history was, his problems with addiction, his criminal defense, that he would receive prison time if he violated his probation. I'd like to just make two quick other points about this section. The state didn't forfeit its challenge regarding how closely balanced the evidence was in this case. We discussed the plain error doctrine in our general authorities. We discussed defendant's lack of citation regarding whether or not a the ultimate sentence, whether or not that opines on the evidence, the closeness of the evidence in question. We discussed that and we made numerous record citations showing that all the evidence that was presented at the sentencing hearing proved the aggravating factors that the court ultimately found with the exception of the one mitigating factor that his action in this case didn't threaten harm. And lastly, regarding the report the defendant cites in their brief, which they say on reply is judicially noticeable. The issue with the report is not the fact that it's not traditionally noticeable. The issue is that it is unfair to impeach the trial court's decision based on a report that the trial court never heard. It's not fair for us to render a decision based on the saying that some court was unreasonable based on a report it never got to hear in an argument that it never encountered at the trial court level. So the reason that the state takes issue with that report is that it simply presents issues that that court never got to hear in an argument that was never presented at that time. If there's no questions on this particular issue, I'll just move on to the ineffectiveness claim. Defendant's counsel effectively assisted in during sentencing. Nothing in the record establishes that defense counsel didn't consult with defendant regarding the petition. And in fact, defense counsel in the brief specifically says that everything appears as if that is the case rather than effectively affirmatively establishing that. And Justice Steigman, I think your work on or some of the opinions you've written regarding post-conviction petitions versus direct appeals and addressing ineffective assistance of counsel kind of goes to this kind of claim where this is the kind of claim that needs to be brought in a post-conviction because it goes to discussions that could not be on the record because they were between counsel and his attorney and that countering them at this level would require us to infer facts that just simply cannot be presented in the record. So if defendant wants to challenge his, he might have a viable claim as to whether or not his attorney effectively assisted him. He should file a post-conviction. He should swear an affidavit saying that he was never consulted and wanted to address this case and that therefore his counsel was ineffective for failing to do that at the sentencing. And defendant cited case of Owens, I believe, I'm sorry, does not comport with this particular case because in that case, the defendant specifically said during the sentencing hearing that he wanted to appeal and immediately after the sentence was rendered, the attorney asked to be discharged at the sentencing hearing before even talking to his client in any shape or fashion. So there the record clearly demonstrated at that point that his counsel had failed to consult with him in any way shape or form as to filing that. And lastly, we would just like to note the state didn't forfeit its argument regarding the effectiveness of defendant's counsel regarding not filing the petition because on pages 25 and 26 of our brief, we discussed the lack of prejudice the defendant experienced as a result of not filing the motion. The state affirmatively declares that if defendant had an unmanifestly unfair sentence, that would obviously be a cognizable claim under prong one of plain error because it is a constitutional violation for someone to receive a sentence that's not commensurate with the offense that they received. So whether or not defendant's counsel preserved the error or not, this claim would have been addressed by this court, regardless of whether a petition was filed, a motion to reconsider was filed at the trial court level. So nothing else. There's no further questions. I see no questions from the panel. So give Miss Lucy an opportunity for any rebuttal. I couldn't hear you. I forgot to unmute myself. I apologize. Very briefly, just two points, Your Honor. First for the court brings up his behavior while on his probation about defrauding a drug test. I wanted to reiterate he's currently serving a six year sentence in the Department of Corrections. So for him to be punished again, not only in that prison sentence and that felony conviction, but then again, during this one would be to punish him for the twice for the same crime. And second, I wanted to bring to the court's attention during in its response brief, the state quoted people be Palmer for the principle that it's this court found it's appropriate for a defendant who conducts himself poorly on probation to get a harsher sentence. And while that is true, this court also wrote that on revoking a defendant's probation, the trial court sentences him to a disposition that would have been appropriate for the original offense. So through the state's argument, I just don't want to lose sight of the fact that the original offense simply wasn't proportionate to a nine year sentence in this case. And to the ineffective assistance of counsel, I would only say that much like in people be Owens, where trial counsel asked to be taken off of the case at the sentencing hearing. Here we have a bill from the attorney that was filed the same day as the sentencing hearing that shows that the last thing he did was the sentencing hearing. There was no other meeting after that, which to think that an attorney who's working on the behalf of the court, but not pro bono wouldn't submit his hours to the court. I believe there is a sufficient record for this court to review for ineffective assistance of counsel. But of course, there's also plain error for these reasons. Oh, apologies, Your Honor. I was just going to say anything. No, thank you very much. Okay. Thank you, counsel. The court will take this matter under advisement and stand in recess. And thank you for your arguments.